UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARISTIAN SULLIVAN,

        Plaintiff,

v.                                    Case No:  8:12-cv-2546-T-30AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Charistian Sullivan seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and he employed proper legal standards, the Court recommends that the decision be affirmed.

**I.**

### A.    Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI on January 15, 2009. (Tr. 138-57.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 62-65, 92-97.)  Plaintiff then requested an administrative hearing. (Tr. 100-01.)  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 41-61, 102-06.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 20-

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action. *See* 42 U.S.C. 405(g); Fed. R. Civ. P. 25(d).

40.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1-4.)  Plaintiff then timely filed a complaint with this Court.  (Dkt. No. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born on July 23, 1980, claimed disability beginning October 22, 2007.  (Tr. 138-42, 148-52, 209.)  However, due to a prior unfavorable decision dated September 18, 2008, the ALJ found the applicable adjudication period began September 19, 2008.  (Tr. 23.)  Plaintiff attended school through the ninth or tenth grade and was attempting to complete her GED.  (Tr. 46, 223.)  Her past relevant work experience included work as a receptionist, order clerk, mail sorter, collection clerk, convenience store clerk, and administrative assistant.  (Tr. 33, 218.)  Plaintiff alleged disability due to a herniated disc, permanent damage to her right hand and arm, depression, memory loss, issues with her right knee, and high blood pressure.  (Tr. 217.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: panic disorder with agoraphobia, major depression, alcohol dependence, history of bulging/herniated disc at L5-S1 with chronic pain and radicular symptoms, and residual weakness in the right ulnar innervated muscles without interference with fine motor coordination.  (Tr. 26, Finding 3.)  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 28, Finding 4.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with some restrictions. (Tr. 30-33, Finding 5.)  Namely, the ALJ determined that Plaintiff has the following severe restrictions: frequent limitation for fine manual dexterity with right hand, occasional

limitation for bending, stooping, crouching and kneeling, and lifting above shoulder height. (Tr. 30, Finding 5.)  Nevertheless, the ALJ found Plaintiff capable of performing routine tasks in an environment with limited work stress and a sit/stand option.  (Tr. 30, Finding 5.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC.  (Tr. 31.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work as a receptionist, mail sorter, collection clerk, convenience store clerk, or administrative assistant. (Tr. 33, Finding 6.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a retail marker, office helper, or copy machine operator.  (Tr. 33-34, Finding 10.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 34, Finding 11.)

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) considering the RFC assessment, whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. *Id.* A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a

4

reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 1035 (2005) (citation omitted).   The Commissioner must apply the correct law and demonstrate that the Commissioner has done so.   While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.   *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of witnesses.   *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971) (per curiam).[2]   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.   *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   *Miles*, 84 F.3d at 1400 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.   42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

### III.

Plaintiff challenges the ALJ's decision on three grounds:

(1)     The ALJ erred by failing to pose a hypothetical question to the VE that comprehensively and accurately described Plaintiff's impairments;

(2)     The ALJ erred by relying on the testimony of the VE because the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"); and

(3)     The ALJ erred by failing to properly consider Plaintiff's subjective complaints.

For the reasons that follow, none of these contentions warrant reversal.

### A. Whether the ALJ failed to pose a hypothetical question to the VE that comprehensively and accurately described Plaintiff's impairments.

First, Plaintiff contends that the ALJ failed to accurately describe all of Plaintiff's impairments in posing a hypothetical question to the VE.   (Dkt. No. 20 at 10-13.) Specifically, Plaintiff argues that the ALJ omitted limitations caused by Plaintiff's injury to her right hand.  (Dkt. No. 20 at 11.)  Plaintiff further contends that the ALJ's hypothetical failed to account for the severity of Plaintiff's anxiety and depression.  (Dkt. No. 20 at 12.) However, because the ALJ posed a hypothetical question to the VE that encompassed all of Plaintiff's limitations supported by the record evidence, the ALJ did not err.

At step five of the sequential analysis, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work, a finding of not disabled is warranted.  *Id.*  Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted.  *Id.*  At this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in the national economy, which given the claimant's impairments, the claimant can perform.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th

Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *see also Wilson*, 284 F.3d at 1227.  Typically, where the claimant cannot perform a full range of work at a given level of exertion or if the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE.  *Jones*, 190 F.3d at 1229.  The testimony of the VE is crucial to the ALJ in reaching a determination at step five of the sequential evaluation process because the VE is an expert with respect to the kinds of jobs an individual can perform based on his or her capacity and impairments.  *See id.* at 1230; *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  In these instances, "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).  However, the "hypothetical need only include limitation[s] supported by the record." *Dunaway v. Astrue*, No. 8:06-CV-1567-T-EAJ, 2008 WL 1897603, at *5 (M.D. Fla. Apr. 28, 2008); *see Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (noting that the ALJ is not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported).

Here, at the administrative hearing, to determine whether jobs exist in significant numbers in the national economy that Plaintiff could perform given her physical and mental limitations the ALJ presented the following hypothetical to the VE:

> Assume we have an individual the same age, education and work experience as the claimant, who has the following residual functional capacity[:] capable of light work with a  frequent limitation and that is two-thirds of the work day, for fine manual dexterity with the right hand and occasional limitation—that's one-third of the work day, for bending, stooping, crouching and kneeling and lifting above shoulder height, but capable of performing routine tasks in an environment with limited work stress and a sit/stand option.  Are there any jobs?

(Tr. 59.)  The VE responded that, given those limitations, Plaintiff could perform the jobs of retail marker, office helper, and copy machine operator.  (Tr. 59.)  Plaintiff argues that the ALJ's finding that Plaintiff's use of her right hand was subject to a frequent limitation for fine manual dexterity was not an accurate description of Plaintiff's functional limitations.  (Dkt. No. 20 at 11.)  Plaintiff avers that the record showed that Plaintiff was incapable of using three fingers on her right hand and that she had difficulty performing even minor tasks, such as brushing her teeth or holding a coffee cup.  (Dkt. No. 20 at 11.)  Additionally, Plaintiff argues that several doctors, including Dr. Passman and Dr. Gargasz, described her right hand as "claw-like."  (Dkt. No. 20 at 11.)  By failing to include these restrictions on Plaintiff's ability to perform gross manipulation with her right hand in his hypothetical to the VE, Plaintiff asserts that the ALJ erred in posing his question to the VE.  (Dkt. No. 20 at 11.)  Plaintiff also alleges that the ALJ's hypothetical was inadequate because it failed to include more restrictive limitations caused by Plaintiff's anxiety and depression.  (Dkt. No. 20 at 12.)

As noted above, the "hypothetical need only include limitation[s] supported by the record." *Dunaway*, 2008 WL 1897603, at *5; *see also Crawford*, 363 F.3d at 1158.  The Eleventh Circuit has noted that the mere existence of impairments "does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Where an ALJ "properly determines that an impairment is not supported by the medical evidence in the record, the ALJ is not required to include such impairment in a hypothetical posed to a V[E]." *Dunaway*, 2008 WL 1897603, at *6.

In posing the hypothetical question to the VE, he ALJ properly included all of Plaintiff's functional limitations supported by the record evidence.  First, regarding the evidence of Plaintiff's right-hand limitations, the record contains emergency room records

from October 21, 2007, reporting that Plaintiff fell through some glass, resulting in multiple lacerations to her right arm.  (Tr. 430-33.)   After being treated in the emergency room, Plaintiff was referred to a hand surgeon for further care.  (Tr. 430-33.)  Thereafter, Plaintiff was treated by Dr. Scott Gargasz at Advanced Hand and Plastic Surgery Center.  (Tr. 337-56.)  On November 14, 2007, Dr. Gargasz noted that Plaintiff was capable of returning to work, but temporarily restricted her to one-handed duty until further evaluation.  (Tr. 337.)  Dr. Gargasz also reported a limited range of motion and weakness in the fingers of Plaintiff's right hand.  (Tr. 338.)   Sensory and motor nerve conduction studies were then performed on Plaintiff's right hand and arm, which revealed mild entrapment of the ulnar nerve across the elbow, also known as cubital tunnel syndrome.  (Tr. 345-48.)  Dr. Gargasz prescribed physical therapy to increase the range of motion of Plaintiff's right hand.  (Tr. 350, 351.)  In June 2008, Plaintiff was treated in the emergency room complaining of a headache and numbness in her left arm.  (Tr. 357-61.)  The examining physician noted Plaintiff had a right "claw hand," but otherwise noted no impairments regarding Plaintiff's right hand.  (Tr. 359.)

Plaintiff was examined by agency physician Dr. Raul Nodal on April 14, 2009.  (Tr. 461-64.)  Dr. Nodal found weakness in the third, fourth, and fifth fingers of Plaintiff's right hand, but noted that Plaintiff was capable of buttoning and unbuttoning, turning doorknobs, zipping and unzipping, pinching, opposing thumbs, and holding a fork, broom, pencil, and knife with both hands.  (Tr. 463.)   In reaching his diagnosis, Dr. Nodal found residual weakness in Plaintiff's right ulnar innervated muscles, but noted that this did not interfere with Plaintiff's fine motor coordination and that Plaintiff's ability to perform tasks requiring fine manipulation was normal in both hands.  (Tr. 464.)  While undergoing a consultative psychological examination by Dr. Lawrence Passman, Dr. Passman reported that the fingers

9

on Plaintiff's right hand "are stereotypically positioned in a claw-like fashion (presumably as a result of her nerve/tendon damage)." (Tr. 441.)

As to Plaintiff's subjective account of her right-hand limitations, Plaintiff reported that she sometimes has difficulty opening containers and is unable to grasp anything tightly with her right hand. (Tr. 243-44.) During the hearing, Plaintiff testified that she has difficulty holding anything with her right hand and buttoning buttons. (Tr. 47-48.) She reported that she experiences numbness, tingling, and stiffness in her right hand. (Tr. 48.)

While Plaintiff's medical records support Plaintiff's contentions that she experiences a decreased range of motion in several of the fingers of her right hand and that her right hand appears "claw like," the records do not support Plaintiff's contention that this impairment caused additional limitations on Plaintiff's ability to perform activities involving gross manipulation. It is clear from the ALJ's decision that he considered the objective medical evidence and Plaintiff's subjective complaints in reaching his determination of Plaintiff's RFC. (Tr. 26-27.) No physician of record, including Plaintiff's treating physician Dr. Gargasz and agency examining physician Dr. Nodal, opined that Plaintiff's right-hand impairment significantly limited her ability to use that hand. Weakness and decreased range of motion was noted by both physicians, but Dr. Nodal found that Plaintiff was capable of buttoning and unbuttoning, turning doorknobs, zipping and unzipping, pinching, opposing thumbs, and holding a fork, broom, pencil, and knife with both hands. (Tr. 463.) Additionally, the ALJ considered Plaintiff's subjective complaints, but found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they conflicted with the RFC. (Tr. 31.) The ALJ rejected Plaintiff's complaints as inconsistent with the record evidence,

10

specifically with Dr. Nodal's opinion.  (Tr. 31.)  The ALJ also noted that after July 2008, Plaintiff no longer sought treatment for her hand, indicating that treatment was either successful or Plaintiff's limitations and symptoms were not as severe as alleged.  (Tr. 31-32.) Because the ALJ articulated specific and adequate reasons for rejecting Plaintiff's subjective complaints regarding her right-hand impairment and his credibility finding is supported by the record, the ALJ did not err in according Plaintiff's subjective complaints little weight.[3]

Plaintiff further contends that the ALJ's hypothetical failed to adequately account for limitations caused by Plaintiff's mental impairments.  (Dkt. No. 20 at 12.)  Namely, Plaintiff argues that that ALJ failed to include in the hypothetical that Plaintiff "would have adaptive deficits in the work domain" and that Plaintiff experienced depression, anxiety, and panic attacks.  (Dkt. No. 20 at 12.)  As to Plaintiff's mental impairments, the record contains a consultative mental status examination performed in March 2009 by Dr. Lawrence Passman. (Tr. 439-42.)  Dr. Passman observed that Plaintiff was oriented in all spheres and that her remote memory was within the normal range, although he noted that Plaintiff's memory for recent events was mildly impaired.   (Tr. 441.)   Dr. Passman found that Plaintiff's concentration was within normal limits and she suffered from no significant cognitive disturbances.  (Tr. 441.)  Additionally, Dr. Passman reported that Plaintiff suffered only mild deficits in her capacity for understanding and memory, no profound deficits in her capacity to interact socially, no deficits in her concentration, persistence, or pace, and some adaptive deficits in the work domain.   (Tr. 442.)   As a result of his examination, Dr. Passman diagnosed Plaintiff with panic disorder with agoraphobia, major depression, and alcohol dependence.  (Tr. 442.)

---

[3]The ALJ's consideration of Plaintiff's subjective complaints is discussed in more detail below.

Agency consulting psychologist Dr. Carol Deatrick prepared a mental residual functional capacity assessment of Plaintiff and found that Plaintiff's mental health impairments caused only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation each of extended duration. (Tr. 457.) Dr. Deatrick noted that Plaintiff may have difficulty with complex tasks but was capable of performing routine, repetitive tasks and was capable of very basic socialization. (Tr. 445, 459.) A second mental residual functional capacity assessment was performed by agency psychologist Dr. James Levasseur, who opined that Plaintiff's mental health impairments caused no restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation each of extended duration. (Tr. 499.) Dr. Levasseur further noted that although Plaintiff experienced some reduction in concentration that would limit pace and persistence, this limitation would not significantly reduce Plaintiff's productivity. (Tr. 497.) He also found that Plaintiff was able to understand and follow instructions, demonstrate a cooperative attitude, make basic work decisions, and adapt adequately to work environments. (Tr. 487.) Plaintiff was treated at Northside Mental Health Center from July 2009 through October 2010 for major depression, post-traumatic stress disorder, bipolar disorder, and alcohol dependence. (Tr. 524-655.) The treatment notes reflect that Plaintiff missed several appointments, but, nevertheless, her mental status exams were either normal or benign. (Tr. 424-25, 536-37, 558, 587, 620-21, 647.)

Given this record evidence of Plaintiff's mental impairments, the ALJ found that Plaintiff was limited to performing routine tasks in a low stress environment. (Tr. 17, 30.) The ALJ properly included this limitation in his hypothetical to the VE, which adequately

encompassed Plaintiff's impairments as supported by the record evidence.  (Tr. 17.)  Plaintiff has failed to show any additional limitations resulting from her mental impairments that were not accounted for by the ALJ in the hypothetical posed to the VE.

Because the ALJ is not required to incorporate limitations not supported by the record evidence into his hypothetical to the VE and the Plaintiff failed to show that she had any limitations greater than those assessed by the VE, the ALJ's hypothetical question to the VE adequately reflected Plaintiff's impairments and the ALJ did not err.

### B.  Whether the ALJ properly relied on the testimony of the VE.

Next, Plaintiff challenges the ALJ's decision on the ground that the ALJ erred in relying on the testimony of the VE after failing to require the VE to reconcile conflicts between her testimony and the DOT as required by Social Security Ruling 00-4p.  (Dkt. No. 20 at 13.)  Specifically, Plaintiff complains that the ALJ's hypothetical called for a sit/stand option, however, Plaintiff contends that, under the DOT, the jobs identified by the VE—retail marker, office helper, and copy machine operator—either do not allow for a sit/stand option or the DOT is silent as to whether the job allows for a sit/stand option.  (Dkt. No. 20 at 13.)  According to Plaintiff, the ALJ was required to inquire of the VE whether any inconsistencies existed between the VE's testimony and the DOT, and, because Plaintiff alleges that such inconsistency did exist, Plaintiff argues that the ALJ erred in failing to elicit testimony from the VE reconciling that conflict.  (Dkt. No. 20 at 13-14.)

Plaintiff alleges that the ALJ further erred at step five by failing to comply with Social Security Ruling 00-4p, which provides, in pertinent part:

> Occupational evidence provided by a VE or [vocational specialist ("VS")] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the

> hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).  The Eleventh Circuit has not explicitly considered if it is error for an ALJ to fail to inquire of a VE whether a conflict exists between the VE's testimony and the DOT when there is no apparent conflict.  Nevertheless, other circuits considering the same issue have concluded that such failure amounts to no more, at worse, than harmless error when no apparent conflict exists.  *See, e.g.*, *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) (finding harmless error in ALJ's failure to inquire about potential conflict between VE testimony and DOT job descriptions when no actual conflict existed); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (explaining that SSR 00-4p only requires an ALJ to obtain an explanation from the VE where the conflict between the DOT and the VE's testimony is apparent); *Renfrow v. Astrue*, 496 F.3d 918, 922 (8th Cir. 2007) (noting that the ALJ's error in not asking the VE about possible conflicts between his testimony and the DOT was harmless, since no such conflict appeared to exist).  Thus, in this case, the question ensues whether a conflict exists between the testimony of the VE and the DOT.  The Court concludes that it does not.

The VE testified that given Plaintiff's limitations, she would be capable of performing the jobs of retail marker, office helper, and copy machine operator.  (Tr. 59.)  The DOT is silent regarding whether any of these jobs would allow for a sit/stand option.  *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* § 209.587-034, 1991 WL 671802 (marker); U.S. Dep't of Labor, *Dictionary of Occupational Titles* § 239.567-010, 1991 WL 672232 (office helper); U.S. Dep't of Labor, *Dictionary of Occupational Titles* § 207.685-014, 1991 WL 671745 (photocopying-machine operator).  Plaintiff contends that this silence amounts to a conflict.  Contrary to Plaintiff's assertion, however, such contention is meritless.  Where the

DOT is silent as to a specific aspect of a job, without more, it does not automatically follow that the VE's testimony is inconsistent. Plaintiff has therefore failed to demonstrate a conflict between the VE's testimony and the DOT regarding the availability of a sit/stand option. Thus, while the ALJ failed to strictly comply with the requirements of Social Security Ruling 00-4p by neglecting to ask the ALJ whether her testimony conflicted with the DOT, this omission amounts to no more than harmless error as no actual conflict exists. *See Cooper v. Astrue*, 373 Fed. Appx. 961, 962 (11th Cir. 2010) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) (holding that an error is harmless if no prejudice results to the claimant).

Further, even assuming that the DOT's silence regarding the sit/stand option for the jobs provided by the VE could be interpreted as conflicting with the VE's testimony, the ALJ did not err. In *Jones v. Commissioner of Social Security*, the Eleventh Circuit held that

> Although the DOT "provides occupational information on jobs in the national economy" it "is not comprehensive" nor "the sole source of admissible information concerning jobs." *Jones*, 190 F.3d at 1230 (quotation marks omitted). As a result, an ALJ consulting the DOT "should supplement the DOT data with local information detailing jobs in the regional community." *Id*. Furthermore, "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Id*. at 1229-30.

423 Fed. Appx. 936, 938 (11th Cir. 2011) [hereinafter *Jones II*].[4]   Thus, the ALJ was permitted to base his findings about the other jobs Plaintiff may perform "exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek

---

[4]After Social Security Ruling 00-4p was promulgated in 2000, some uncertainty arose as to whether the Eleventh Circuit's prior precedent holding that an ALJ may rely on the testimony of a VE regardless of whether it conflicts with the DOT remained in effect. *Corbitt v. Astrue*, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *5 (M.D. Fla. Apr. 17, 2008) (citing *Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1339 (M.D. Fla. 2007)).   In an unpublished opinion, however, the Eleventh Circuit has specifically found that agency rulings do not bind federal courts and has continued to hold that the testimony of a VE trumps the DOT and that the ALJ may rely on the VE's testimony notwithstanding conflicts with the DOT. *Miller v. Comm'r of Soc. Sec.*, 246 Fed. Appx. 660, 662 (11th Cir. 2007) (citing *Heckler v. Edwards*, 465 U.S. 870, 874 n.3 (1984)); *see also Jones II*, 423 Fed. Appx. at 939, n.4.

further explanation." *Id.* at 939.  Consequently, even if there was an inconsistency between the VE's testimony and the DOT, the ALJ properly relied on the VE's testimony that Plaintiff could perform other work given her RFC.

Accordingly, the ALJ did not err in relying on the testimony of the VE, and, ergo, the ALJ's finding that Plaintiff could perform other jobs existing in significant numbers in the economy is supported by substantial evidence.

### C.  Whether the ALJ properly considered Plaintiff's subjective complaints.

Last, Plaintiff contends that the ALJ failed to properly consider Plaintiff's subjective complaints of pain and other symptoms, and in so doing, failed to make a proper credibility finding.  (Dkt. No. 20 at 14-16.)  Namely, Plaintiff argues that the reasons articulated by the ALJ for discrediting her subjective complaints are insufficient.  (Dkt. No. 20 at 15.)  Contrary to Plaintiff's assertions, however, the ALJ provided sufficient grounds to discredit Plaintiff's subjective complaints, and his decision is supported by substantial evidence.  Consequently, Plaintiff's claims are unpersuasive.

As an initial matter, Plaintiff's statements of pain will not alone establish disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529, 416.929.  Plaintiff's diagnosis of or a test result reflecting a condition does not equate to an automatic finding of a disability; it is the effect of a condition or a combination of conditions on Plaintiff's ability to work that determines whether Plaintiff is disabled.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Moreover, Plaintiff bears the burden of proving that her conditions limit her ability to work.  *See* 20 C.F.R. §§ 404.1512, 416.912.  Plaintiff has failed to meet that burden, as the record evidence establishes that Plaintiff has the ability to perform a limited range of light work.  (Tr. 30-33.)

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints.  As the Court of Appeals explained in *Landry v. Heckler*, the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain [or symptoms] arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or symptoms]."  782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam); *see Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam) (holding that the pain standard also applies to complaints of subjective conditions other than pain); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[T]here must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled.").  If the ALJ discounts Plaintiff's testimony concerning subjective complaints after finding a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, he must "articulate explicit and adequate reasons" for doing so.[5]  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam)).  The reasons given for discrediting pain testimony must be based on substantial evidence.  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam); *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  In evaluating credibility, the ALJ must consider objective medical evidence and other evidence such as a claimant's daily activities, the location, duration,

_____

[5]This is the second step in a two-step process in considering a claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c) (evaluating the intensity and persistence of symptoms in light of all evidence to determine the capacity to work).

frequency, and intensity of a claimant's pain or other symptoms, and precipitating and aggravating factors.  20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ properly applied the pain standard and found, after considering the evidence of record, that Plaintiff's medically determinable impairments "could be reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with Plaintiff's RFC.  (Tr. 31.)  Contrary to Plaintiff's assertions, and as required by the Eleventh Circuit, the ALJ articulated "explicit and adequate reasons" for rejecting Plaintiff's allegations of pain and other symptoms.  (Tr. 30-33.)

The ALJ highlighted various reasons for determining that Plaintiff's statements were not entirely credible, all of which were supported by the record.  (Tr. 31-33.)  Specifically, the ALJ found that "[w]hile [Plaintiff] alleges some quite severe limitations related to her impairments, the record suggests that [Plaintiff's] assertions are so extreme as to appear implausible."  (Tr. 31.)  As the ALJ summarized in his decision, Plaintiff alleged that due to issues with her back she spends eighty percent of her time in bed.  (Tr. 56.)  But the ALJ found that this subjective statement of Plaintiff's disabling symptoms was inconsistent with the evidence of record.  (Tr. 31.)  For example, the ALJ noted that despite this statement of disabling back pain, an MRI of Plaintiff's spine showed only mild circumferential disc bulging at L4-5 with flattening of the thecal sac and no central canal or neural foraminal stenosis and a broad-based disc bulge at L5-S1 with flattening of the thecal sac, no central canal stenosis, but with mild bilateral neural foraminal narrowing.  (Tr. 324.)  The MRI noted that Plaintiff was capable of returning to unrestricted activity and it was recommended that she be treated with pain medication and an at-home exercise regimen.  (Tr. 324.)  Further, the ALJ noted that Plaintiff only sought treatment for back pain on one occasion from 2004 to

2007, and that Dr. Nodal, who performed a physical examination of Plaintiff reported that Plaintiff experienced diffuse bilateral periscapular tenderness as well as tenderness in the right lumbar paraspinal area, but that Plaintiff was able to walk on both heels, toes, and in tandem and was able to stand from a seated position with ninety degree flexion without assistance. (Tr. 461-62.); *see Dyer*, 395 F.3d at 1211 (noting that an ALJ properly discredited a claimant's subjective complaints of pain, in part, because the claimant infrequently sought treatment for his impairment).   In 2010, Plaintiff was treated for her back pain with medication only—a conservative course of treatment.  (Tr. 657-59.)  The ALJ also found that Plaintiff's allegation that she spent a majority of her time in bed implausible because Plaintiff stated that she lives alone with two young children for whom she is the primary caretaker and she does not receive in-home childcare assistance.  (Tr. 32.)  Because Plaintiff's allegations of disabling symptoms resulting from back pain conflicted with the evidence of record, the ALJ accorded Plaintiff's complaints regarding her back pain little weight.  (Tr. 31.)

As to Plaintiff's allegations regarding her right hand, the ALJ noted that Plaintiff reported difficulty grasping, opening containers, writing, buttoning, and doing "pretty much everything."  (Tr. 47-49.)  The ALJ found that Plaintiff's allegations were not supported by the record evidence, particularly the findings of Dr. Nodal that Plaintiff was capable of buttoning and unbuttoning, turning doorknobs, zipping and unzipping, pinching, opposing thumbs, and holding a fork, broom, pencil, and knife with both hands.  (Tr. 31, 463.)  The ALJ further noted Plaintiff's lack of treatment for her hand after July 2008, which the ALJ found suggested either that treatment was successful or that Plaintiff's limitations were not as severe as alleged.  (Tr. 31-32.); *see Dyer*, 395 F.3d at 1211.  Because Plaintiff's allegations regarding her right hand limitations were inconsistent with the record evidence, the ALJ properly accorded Plaintiff's subjective account of her pain and symptoms little weight.

Finally, with regard to Plaintiff's mental impairments, the ALJ noted that Plaintiff did not seek treatment for her mental impairments until July 2009,[6] when she began attending appointments at Northside Mental Health Center.  (Tr. 32.)  The treatment notes reflect that Plaintiff missed several appointments, and despite ongoing treatment, Plaintiff's mental status examinations produced results within the normal range.  (Tr. 424-25, 536-37, 558, 587, 620-21, 647.)  The ALJ also highlighted that Dr. Passman, who performed a psychological consultative examination of Plaintiff, reported that Plaintiff's self-report regarding her right hand injury was inconsistent, and therefore the veracity of the remaining information furnished by Plaintiff was questionable.  (Tr. 442.)  Dr. Passman also found that Plaintiff's alcohol abuse may have contributed to some of the memory problems experienced by Plaintiff.  (Tr. 442.)  Last, the ALJ noted that Plaintiff alleged difficulty with social functioning.  (Tr. 32.)  However, beyond being unsupported by the record evidence, the ALJ found that Plaintiff received significant assistance from her friends and neighbors, which was inconsistent with Plaintiff's allegations of difficulties with social functioning.  (Tr. 32.)  Moreover, the record also reflects that Plaintiff often spoke to friends or family on the phone. (Tr. 245.)  Accordingly, the ALJ accorded Plaintiff's subjective complaints regarding the limitations caused by her mental impairments little weight.

Consequently, the objective medical evidence and other evidence in the record undermines Plaintiff's allegations of disabling limitations.  Thus, the ALJ's finding that Plaintiff's claims of pain and other symptoms were not entirely credible was well within his realm of discretionary judgment.  *See Faber v. Astrue*, No. 5:08-cv-260-Oc-GRJ, 2009 WL 3158182, at *10 (M.D. Fla. Sept. 25, 2009) (affirming the ALJ's credibility finding because

---

[6]The ALJ actually noted that Plaintiff's treatment at Northside Mental Health Center began in November 2009, but the record reflects treatment as early as July 2009.  (Tr. 585-88.)  Nevertheless, this minor discrepancy between the record and the ALJ's findings is harmless as it does not impact the ALJ's conclusions.

plaintiff's allegations were inconsistent with her self-reported activities of daily living and the objective medical evidence of record).  While Plaintiff may argue that the record supports a contrary conclusion, it is "within the ALJ's discretion to determine, after listening to [Plaintiff's] testimony, that [her] claims of pain and other symptoms were not credible."  *Holt*, 921 F.2d 1223; *see also Adefemi*, 386 F.3d at 1027 (stating that "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings").

Thus, the ALJ properly articulated his reasons for doubting the credibility of Plaintiff's allegations, and his finding is supported by substantial evidence.  As a result, Plaintiff's argument is without merit.

## IV.

Accordingly, after due consideration and for the foregoing reasons, it is hereby RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 18th day of February, 2014.


ANTHONY E. PORCELLI
United States Magistrate Judge


## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served

on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.   28 U.S.C. § 636(b)(1)(c); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:
Hon. James S. Moody
Counsel of Record